**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

BERNADINE JONES,

       Plaintiff,

v.                                      CIV 18-0495 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and/or

Remand (*Doc. 16*), filed on December 10, 2018. Pursuant to 28 U.S.C. § 636(c) and

Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge

and entering final judgment. *See Docs. 6*; *9*; *10.* Having considered the record,

submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-

taken and will be denied.

### I.    Procedural History

Ms. Bernadine Jones (Plaintiff) protectively filed an application with the Social

Security Administration for Disability Insurance Benefits (DIB) under Title II of the Social

Security Act on January 14, 2014. Administrative Record[1] (AR) at 109, 263-64. Plaintiff

alleged a disability onset date of December 24, 2010. *See* AR at 263. Because

Plaintiff's earning record showed that she "ha[d] acquired sufficient quarters of coverage

---

[1] Document 13-1 comprises the sealed Administrative Record. *See Doc. 13-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

to remain insured through December 31, 2015[,]" she was required to "establish disability on or before that date in order to be entitled to a period of disability and [DIB]." AR at 15, 294.

Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 109-26) and on reconsideration (AR at 127-42). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of her application. AR at 153. Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing.[2] *See* AR at 38-93. ALJ Lillian Richter issued an unfavorable decision on February 27, 2017. AR at 12-37. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 241-62), which the council denied on March 26, 2018 (AR at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

---

[2] Plaintiff appeared pro se at an earlier hearing, but she agreed to reschedule the hearing after the ALJ explained that she could obtain an attorney on a contingent fee arrangement. *See* AR at 94-108.

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R § 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process,[3] ALJ Richter found that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of December 24, 2010[,] through her date last insured of December 31, 2015." AR at 17 (citing 20 C.F.R. §§ 404.1571-1576). At Step Two, the ALJ concluded that Plaintiff "had the

---

[3] ALJ Richter first found that Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2015." AR at 17.

following severe impairments: epicondylitis; cervical radiculitis; insomnia; obesity; metabolic syndrome; joint pain of the hand; psoriatic arthropathy; osteoarthritis of the bilateral hands; bilateral trigger finger of the thumb; fatigue; polycythemia; migraines; epilepsy; degenerative disc disease of the cervical spine; mild degenerative disc disease of the acromioclavicular joint of the right shoulder; depression; anxiety; and posttraumatic stress disorder." AR at 17 (citing 20 C.F.R. § 404.1520(c)). ALJ Richter also noted the following nonsevere impairments that did "not significantly limit [her] ability to perform basic work activities": "hypertension; hypothyroidism; tinnitus; hyperglycemia; hypertriglyceridemia; restless leg syndrome; and metatarsal fracture." AR at 17-18.

At Step Three, the ALJ found that "[t]hrough the date insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 18 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). Ultimately, the ALJ found that through the date last insured, Plaintiff

> had the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except that [she] can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 6 hours, and sit for 6 hours in an 8 hour day; can occasionally handle and finger bilaterally; can frequently stoop, kneel, crouch, and crawl; can frequently climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can never balance; can never be exposed to unprotected heights or moving mechanical parts; should avoid extreme cold; cannot operate a motor vehicle; is limited to simple, routine, and repetitive work; can have occasional interaction with supervisors, coworkers, and members of the public; and is limited to making simple work related decisions in a workplace with few changes in the routine work setting.

4

AR at 21. The ALJ determined that, through the date last insured, Plaintiff can perform the jobs of cotton classer aide, blending tank tender helper, and laminating machine offbearer. AR at 30. Ultimately, the ALJ found that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from December 24, 2010, the alleged onset date, through December 31, 2015, the date last insured." AR at 30 (citing 20 C.F.R. § 404.1520(g)).

### III.    Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV.     Discussion

Plaintiff contends that the following issues require reversal: (1) the ALJ inadequately weighed the opinions of Michael Gzaskow, M.D., consulting psychiatrist; (2) the ALJ inadequately weighed the opinion of Dawn Barr, MSW, LCSW; (3) the ALJ offered insufficient reasoning for giving significant weight to the state agency consultants. *Doc. 16* at 17-22.

### A.     The ALJ adequately evaluated Dr. Gzaskow's opinions.

Plaintiff first argues that the ALJ erred in evaluating the opinions of Dr. Gzaskow, who is a licensed medical doctor and an acceptable medical source under the regulations. *See Doc. 16* at 17-19. Plaintiff saw Dr. Gzaskow, a consultative psychiatrist, one time in connection with her application for DIB. *See* AR at 371-73, 798-804. "When considering the weight of non-treating sources, the ALJ must consider" the factors as laid out in 20 C.F.R. § 404.1527(c). *See Dingman v. Astrue*, No. 08-cv-02175-PAB, 2010 WL 5464301, at *4 (D. Colo. Dec. 29, 2010) (citation omitted). The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotations omitted).

With respect to the first and fifth factors, the ALJ noted that Plaintiff "presented for a psychological evaluation with Michael Gzaskow, M.D., in May 2016 . . . ." AR at 26. With respect to the second factor, ALJ Richter summarized Dr. Gzaskow's examination of Plaintiff and his findings. AR at 26, 27 (citing AR at 798-804). With respect to the third and fourth factors, the ALJ made specific findings (discussed below) regarding how Dr. Gzaskow's opinions were supported by his examination findings and by the record evidence. AR at 26-27.

Plaintiff asserts that the ALJ erred in failing to mention two things. First, the ALJ did not mention "Dr. Gzaskow's mental status examination findings of sad expression, tense posture, underactive psychomotor activity, depressed mood, moderate apathy, withdrawn/passive manner, flat affect and episodic suicidal ideations." *Doc 16* at 17. As the Commissioner points out, however, "[t]he ALJ is not required to discuss every piece of evidence." *Doc. 18* at 11 (quoting *Wall*, 561 F.3d at 1067 (internal quotation marks and citation omitted)). And contrary to Plaintiff's assertion, the ALJ did note that Plaintiff had a sad facial expression "with mild underactive psychomotor activity" and a depressed mood. *See* AR at 26, 801. It is clear to the Court that ALJ Richter did not simply pick the positive exam findings and ignore the negative.

Second, Plaintiff contends that the ALJ erred in failing to discuss her Patient Health Questionnaire ("PHQ-9") test results. *Doc. 16* at 18.

The PHQ-9 "is one of the most validated tools in mental health and can be a powerful tool to assist clinicians with diagnosing depression and monitoring treatment response. The nine items of the PHQ-9 are based directly on the nine diagnostic criteria for major depressive disorder in the DSM-IV." Aims Center, *Advancing Integrated Mental Health Solutions, PHQ-9 Depression Scale*, . . . https://aims.uw.edu/resource-library/phq-9-depression-scale. The PHQ-9 may be used "as a screening tool, an aid in diagnosis, and as a symptom tracking tool that can help track a patient's overall depression severity as well as track the improvement of specific symptoms with treatment." *Id.* Studies have shown the PHQ-9 to be a "reliable and valid measure of depression severity." Kurt Kroenke, MD, Robert L. Spitzer, MD, and Jane Williams, DSW, *The PHQ-9: Validity of a Brief Depression Severity Measure*, J. Gen. Intern. Med., Sept. 16, 2001, at 606-13.5. The "[r]eliability and validity of the [PHQ-9] have indicated it has sound psychometric properties." American Psychological Association, Patient Health Questionnaire (PHQ-9 & PHQ-2).

*Farden v. Berryhill*, No. 1:17-CV-00704-LF, 2019 WL 245465, at *4 (D.N.M. Jan. 17, 2019). At her May 12, 2016 examination with Dr. Gzaskow, Plaintiff scored 24/27 on the PHQ-9, indicating that she "suffers from severe depression that interferes with [her] daily activities 28.1 days every three months." *Doc. 16* at 18 (citing Doc. 16-1 (*The PHQ-9: Validity of a Brief Depression Severity Measure* at 1 & Table 5); *see also* AR at 802. Plaintiff contends that the PHQ-9 results contradict ALJ Richter's statement that "nothing in [Dr. Gzaskow's] examinations seems to support these limitations." *Doc. 16* at 18 (quoting AR at 27). This presents a closer issue for the Court to determine. Two recent cases out of this district present somewhat opposing views on the subject.

In *Campos v. Berryhill*, the plaintiff was seen by a physician assistant (PA) who administered the PHQ-9. Civ. No. 17-1070 GJF, 2018 WL 6259234, at *8 (D.N.M. Nov. 30, 2018). The PA completed a mental RFC assessment, which the ALJ gave little weight. *Id.* at *7. The PA concluded that the plaintiff had "difficulty with memory and attention . . . ." *Id.* The ALJ found this conclusion was inconsistent with the PA's

observation that plaintiff "stated that his psychotropic medications helped to effectively manage his psychiatric symptoms, and during the mental status examination, his thought was linear, organized and goal directed." *Id.* The ALJ also noted that the PA was not an acceptable medical source. *Id.*

The plaintiff argued in part that the ALJ had erred in failing to mention the PHQ-9 results. *Id.* at *9. Judge Fouratt upheld the ALJ's decision, finding that the ALJ had adequately considered and explained the weight he gave to the PA's opinion in a way that allowed the court to follow his reasoning. *Id.* The court also found that the ALJ's findings were supported by substantial evidence. *Id.* at *10. With respect to the PHQ-9 results, the court noted that the PA "did not expound on the significance of this test or discuss it in any meaningful way"; thus, "because the ALJ 'as a rule is not a doctor, he should avoid commenting on the meaning of a test . . . when there has been no supporting expert testimony." *Id.* (quoting *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982)). Moreover, the court opined, "the ALJ was not required to view the results of a *self-administered*, if not self-serving, questionnaire as 'uncontroverted' or 'significantly probative' evidence of a disabling condition that warranted discussion − particularly when the veracity of Plaintiff's disability assertions had already come into question . . . ." *Id.* (citing *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)) ("requiring the ALJ to discuss 'significantly probative' or 'uncontroverted' evidence that he did not rely on).

The *Campos* court concluded that because "the ALJ considered [the PA's] findings[,] which explicitly referred to and also incorporated the results of these PHQ-9 tests[,]" the ALJ "therefore considered not only the raw test results but, more importantly, [the PA's] incorporation of these results into to [sic] her findings regarding

the [p]laintiff's mental capacities." *Id.* The court found that "as a matter of law, the ALJ was not required to discuss the PHQ-9 test." *Id.*

In *Farden*, the plaintiff also underwent a psychological consultative examination with Dr. Gzaskow, who administered the PHQ-9 and calculated a score of 25/27. 2019 WL 245465, at *4-5. The ALJ gave little weight to Dr. Gzaskow's opinions and explained that "Dr. Gzaskow based [his] opinion exclusively on the claimant's statements[,]" which were not corroborated by either the medical record or his own exams. *Id.* at *5-6 (quotation omitted). Judge Fashing found that the ALJ erred in claiming "that Dr. Gzaskow based his opinion 'exclusively' on the claimant's statements" where he also based the opinion on the psychological testing and his own examination. *Id.* at *6. Noting that "the ALJ failed to mention the objective tests Dr. Gzaskow administered[] and ignored Dr. Gzaskow's statement that the testing had produced valid results and that [plaintiff] showed no attempts at being evasive and shared his history openly[,]" the Court held that the ALJ erred in rejecting Dr. Gzaskow's opinion. *Id.*

Similarly, here, ALJ Richter failed to mention both the psychological testing Dr. Gzaskow performed, as well as his comments that Plaintiff showed "no attempts to be evasive as she shared her past history openly." *See* AR at 801. The ALJ also discounted Dr. Gzaskow's opinion because it "appears to be based primarily upon [Plaintiff's] subjective allegations" and was not "wholly consistent with the examination findings . . . ." AR at 26-27. But unlike in *Farden*, ALJ Richter's evaluation of Dr. Gzaskow's opinion was more fully developed. For example, the ALJ noted that Dr. Gzaskow opined Plaintiff's limitations dated back to 2011 (AR at 27, 862, 870), which is inconsistent with record evidence that indicates her mood improved and was well-

10

controlled with treatment and that she was not receiving counseling for much of the time

period in question. AR at 27 (citing, *e.g.*, AR at 509 (mood improved), 675 (symptoms

well-controlled, compliant with medications), 678 (symptoms well-controlled), 588, 592,

596, 600, 603, 614, 617, 620, 623, 630, 634, 708, 712, 716, 720 (notes from September

2012 through June 2014 reflecting that Plaintiff was not currently receiving counseling)).

Plaintiff contends that she was receiving counseling, as reflected by the records from

Santa Fe Community Guidance Center ("SFCGC"). *Doc. 16* at 18. Yet, these notes

reflect that the purpose of Plaintiff's visits with SFCGC were for "Medication

Management," not for counseling. *See, e.g.*, AR at 614, 617, 620, 623, 629, 633, 708,

712, 716, 720.[4] Moreover, several of these records specifically mention that Plaintiff

would "benefit from therapy" (AR at 629) and that she is "not currently receiving

counseling" (AR at 708, 712, 716, 720).

Finally, ALJ Richter also discounted Dr. Gzaskow's opinions because they were

inconsistent. *See* AR at 27. Dr. Gzaskow submitted two Medical Source Statements of

Ability to do Work-Related Activities (Mental), two weeks apart. *See* AR at 861-63, 869-

71. In the first Statement, submitted on June 7, 2016, Dr. Gzaskow opined that Plaintiff

has two mild restrictions in her abilities to (1) understand and remember simple

instructions and (2) carry out simple instructions. AR at 861. In his second Statement,

submitted on June 20, 2016, he opined that Plaintiff had moderate, rather than mild,

restrictions in the two above abilities, and instead, that she has a mild restriction in her

ability to interact appropriately with the public, which he had previously marked as a

---

[4] The most recent records do not mention SFCGC, but they are signed by the same provider as
the earlier records—Michael D. Miller, CNP.

moderate restriction. AR at 861-62, 869-70. Additionally, in his first Statement, he found

that she would have marked restrictions in her ability to interact appropriately with

supervisors, which he changed to a moderate restriction in his second Statement. AR at

862, 870. Thus, for the reasons stated above, the Court finds that ALJ Richter, unlike

the ALJ in *Farden*, "'provide[d] specific, legitimate reasons for rejecting' Dr. Gzaskow's

opinion[s]." *See* 2019 WL 245465, at *6 (quoting *Doyal*, 331 F.3d at 764).

Most importantly, Plaintiff has failed to establish that the ALJ's decision is not

supported by substantial evidence. Plaintiff argues that, contrary to the ALJ's statement

that her symptoms were well-controlled with medication, there is record evidence to

support a conclusion that her symptoms were *not* well-controlled. *See Doc. 16* at 18-19

(citing AR at 855, 858). While it is true that there are some records that would support

Plaintiff's argument, the ALJ adequately identified records that supported her

conclusion. The Court "may not displace the agenc[y's] choice between two fairly

conflicting views, even though the court would justifiably have made a different choice

had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (internal quotation marks

and citation omitted).

The Court declines to go as far as the *Campos* court in finding that the PHQ-9 is

a "self-serving" questionnaire, 2018 WL 6259234, at *10, where it has been found to be

"one of the most validated tools in mental health . . . ." *Advancing Integrated Mental

Health Solutions, PHQ-9 Depression Scale*, https://aims.uw.edu/resource-library/phq-9-

depression-scale. Importantly, *Campos* is distinguishable from the case at bar as it

involved a PA, which is not an acceptable medical source, whereas Dr. Gzaskow is a

Board Certified Psychiatrist and an acceptable medical source under the regulations.

*See* 20 C.F.R. § 404.1527(c), (f); *see also* AR at 803. Ultimately, the Court finds that

ALJ Richter adequately explained her findings regarding Dr. Gzaskow's opinions, and

the Court finds no reversible error on this issue.

### B. The ALJ adequately evaluated Ms. Barr's opinions.

Dawn Barr, MSW, LISW, began seeing Plaintiff for counseling in January 2015.

*See* AR at 776. The record contains two letters and a medical source statement, but no

therapy notes,[5] from Ms. Barr. In March 2016, Ms. Barr noted Plaintiff's diagnoses of

PTSD and Major Depression Disorder, Severe, Recurrent, No Psychosis and explained

that she has seen her since January 2015 in order to assess the symptoms and help

her decrease the depression." AR at 776. Ms. Barr disclosed that Plaintiff

> has nightmares, flashbacks, and startles easily. She has trouble getting to
> sleep and staying asleep. She has low energy and some days cannot get
> out of bed due to depression and/or her arthritis. The depression is evident
> every day. . . . We are working to identify the triggers of the PTSD and thus
> prepare a plan to decrease being triggered by her past. . . . The depression

---

[5] In a footnote to her brief, Plaintiff asserts that her "counsel requested that the ALJ subpoena records from Ms. Barr since [counsel] was unable to obtain them." *Doc. 16* at 18 n.19 (citing AR at 92). Plaintiff notes that the ALJ did not comment on this issue, but she does not present any legal argument regarding this point. *Id.* The Commissioner does not respond to this footnote. In her reply brief, Plaintiff raises the issue again and argues that the ALJ failed to develop the record. *See Doc. 19* at 2 n.1.

The Court disagrees that there was any clear request for a subpoena at the hearing. At the beginning of the hearing, in response to the ALJ's question whether the record was complete, Plaintiff's attorney mentions that he had "asked Copper Canyon Wellness for copies of her medical records," but he was only given a summary of Plaintiff's psychotherapy records (presumably with Ms. Barr). *See* AR at 41-42. The attorney then says, "I'd like to double check with their office, if they'll − they only provided a summary. And if they do, that's all they do." AR at 41-42. The ALJ says, "let us know, because if they're telling you that they'll only provide a summary, I may issue a subpoena." AR at 42. At the end of the hearing, the attorney says again, "I will get a response from Copper Canyon Wellness . . . as soon as I can . . . ." AR at 91. The ALJ responds, "**I'll wait to hear from you. And then I will issue [an] investigative subpoena**[] . . . ." AR at 92(emphasis added). Plaintiff has not alleged that her attorney requested the records again and asked the ALJ to subpoena a more complete record. Accordingly, the Court rejects any claim of error on this point.

> causes [Plaintiff] to keep to herself. She has no friends and is isolated. Her depression is worse in the winter because of the darkness and the isolation. We have been working on emotional triggers, daily goals of completing activities, and building up self-esteem.

AR at 776.

In August 2016, Ms. Barr completed a Medical Source Statement of Ability to do Work-Related Activities. AR at 874-78. Ms. Barr opined that Plaintiff has mild limitations in two areas, moderate limitations in six areas, and marked limitations in twelve areas. *See* AR at 874-78.

Ms. Barr submitted a second letter in December 2016. *See* AR at 879. Here, Ms. Barr stated that Plaintiff is "compliant with her medication" for depression and anxiety and "faithfully attends weekly therapy sessions unless her heath interferes." AR at 879. Ms. Barr shared that Plaintiff "had some intrusive recollections this past summer [that] have interfered with her normal daily routine. [She] has been learning calming skills to use when overly stressed." AR at 879. She continued that they

> are working on decreasing the traumatic impact of these thoughts on her life; however, there are times when the emotions are too overwhelming. This combined with her physical problems places her in bed for days on end. This has been further complicated by the stress of family issues[,] . . . the fact that she has no income[,] and [she] is trying to get on disability.

AR at 879.

The ALJ summarized Ms. Barr's two letters and "note[d] that Ms. Barr did not provide any quantifiable work related functional limitations in these letters." AR at 27-28. The ALJ also mentioned that "treatment notes reflect that [Plaintiff's] symptoms were well controlled with medications." AR at 28 (citing AR at 673-723). ALJ Richter then said that Ms. Barr opined in the Medical Source Statement that Plaintiff "is essentially unable

to work, as she noted that [Plaintiff] has marked limitations in various areas of mental functioning, and that she would miss work more than three or four times per month." AR at 28 (citing AR at 874-78). The ALJ gave little weight to this opinion, as it "is inconsistent with mental health treatment notes indicating that [Plaintiff's] symptoms were controlled with medications." AR at 28 (citing AR at 679, 725). The ALJ also discounted Ms. Barr's opinion on the basis that it is inconsistent with Plaintiff's activities of daily living, specifically with the fact that Plaintiff can drive, care for her grandchildren, play computer games, and ride a motorcycle. AR at 28.

Plaintiff argues that ALJ Richter erred in giving little weight to Ms. Barr's opinion on the basis that her symptoms are well-controlled with medication. *Doc. 16* at 20. Plaintiff cites to an April 2016 treatment note that shows her mental health symptoms are "poorly controlled" despite being compliant on her medication[6] (*id.* (citing AR at 855, 858)), and to 2014 and 2015 treatment notes to show that Plaintiff was having "difficulty functioning and worsening symptoms in addition to symptoms being fairly well controlled" (*id.* (citing AR at 678-80, 681-83, 700-03)). Again, however, Plaintiff fails to show that substantial evidence does not support ALJ Richter's findings. ALJ Richter cited to sufficient record evidence to support her ultimate findings. AR at 23 (citing, *e.g.*, AR at 386, 509, 637, 629), 24 (citing, *e.g.*, AR at 492, 588, 590, 592-94, 606, 608, 611), 25 (citing*, e.g.*, AR at 684, 725).

Plaintiff also argues that the ALJ erred in finding that Ms. Barr's opinion is inconsistent with her activities of daily living. *Doc. 16* at 20. Yet, Ms. Barr opined that

---

[6] Plaintiff states that the treatment note indicates "the medication is losing its effectiveness." *Doc. 16* at 20 (citing AR at 855, 858). The Court is unable to locate any such note on those two pages but notes the record states that the "medication response [w]orsened." AR at 858.

Plaintiff has marked limitations in her abilities to be aware of normal hazards and take

appropriate precautions as well as to travel in unfamiliar places, and the Court

understands the ALJ's reasoning in finding that these limitations are inconsistent with

Plaintiff's activities of driving and riding a motorcycle.[7] *See* AR at 22, 876. Similarly, the

Court can follow the ALJ's reasoning that Plaintiff's ability to use a computer and the

internet, pay bills, and care for her grandchildren for over one year are inconsistent with

Ms. Barr's opined marked limitations in the abilities to maintain attention and

concentration for extended positions, sustain an ordinary routine without special

supervision, respond appropriately to changes, and set realistic goals and make plans

independently of others. *See* AR at 22, 875-77. *See also Campos*, 2018 WL 6259234,

at *11 (finding that the "Court will thus uphold the ALJ's decision − even were it 'of less

than ideal clarity'") (quoting *Davis v. Erdmann*, 607 F.2d 917, 919 n.1 (10th Cir. 1979)).

The Court finds no reversible error in the ALJ's evaluation of Ms. Barr's opinions.

C.    **The ALJ sufficiently explained her reasoning for affording "significant weight" to the state agency consultants.**

Plaintiff argues that ALJ Richter gave undue weight to the state agency

physicians, because typically, "an ALJ should give greater weight to the opinion of an

examining source over those of a non-examining source." *Doc. 16* at 21 (citing *Thomas*

*v. Barnhart*, 147 F. App'x 755, 760 (10th Cir. 2005)). Here, the ALJ gave the opinions of

Sheri Simon, Ph.D., and Dan Cox, Ph.D., state agency psychological consultants,

significant weight. AR at 28; *see also* AR at 110-42. The ALJ explained that they "are

medical experts who are well-versed in the assessment of functionality as it pertains to

---

[7] That Plaintiff testified she stopped riding her motorcycle due to physical pain is inapposite, when Ms. Barr was opining on her mental limitations. *See Doc. 16* at 21 (citing AR at 51).

the disability provisions of the Social Security Act and Regulations. Their opinions reflect a review of and consistency with the medical evidence[,]" and the "[l]imitations they opined are supported by [Plaintiff's] reports of difficulty getting along with others and her difficulty concentrating." AR at 28 (citing AR at 308-16, 798-804).

Plaintiff contends that the ALJ erred in failing to discuss how the state agency physicians' opinions were inconsistent with those of Dr. Gzaskow and/or Ms. Barr. *See Doc. 16* at 21. However, the Court has already found that the ALJ's evaluation of Dr. Gzaskow's and Ms. Barr's opinions was sufficient; thus, the Court finds no reversible error in any perceived failure to mention how the state agency consultants' opinions differed from those.

## V.     Conclusion

The Court finds that the ALJ adequately assessed the opinions in the record, and Plaintiff has failed to establish any reversible error.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and/or Remand (*Doc. 16*) is **DENIED**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent